UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -      x

UNITED STATES OF AMERICA                  :

            -v.-                        :

                             :

GERY SHALON,                              :    **SEALED SUPERSEDING**
    a/k/a "Garri Shalelashvili,"         :    **INDICTMENT**
    a/k/a "Gabriel,"                     :
    a/k/a "Gabi,"                        :    S1 15 Cr. ~~555~~ 333 (LTS)
    a/k/a "Phillipe Mousset,"            :
    a/k/a "Christopher Engeham,"         :
JOSHUA SAMUEL AARON,                      :
    a/k/a "Mike Shields," and            :
ZIV ORENSTEIN,                            :
    a/k/a "Aviv Stein,"                  :
    a/k/a "John Avery,"                  :

              Defendants.         :

- - - - - - - - - - - - - - - - - -      x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/u/. 
```

      The Grand Jury charges:

### Relevant Persons and Entities

    1.    At all times relevant to this Indictment, GERY SHALON,

a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi,"

a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham" ("GERY

SHALON"), the defendant, was a citizen and resident of Israel.

At all relevant times, SHALON was the leader and self-described

"founder" of a sprawling cybercriminal enterprise that

encompassed all of the criminal schemes described herein.

SHALON's cybercriminal enterprise operated through hundreds of

employees, co-conspirators and infrastructure in over a dozen countries.

2.    At all times relevant to this Indictment, JOSHUA SAMUEL AARON, a/k/a "Mike Shields" ("JOSHUA AARON"), the defendant, was a United States citizen who, at relevant times, resided in the United States, Israel, and Russia.  At the direction of GERY SHALON, the defendant, AARON engaged in computer hacking crimes and securities market manipulation schemes in the United States as set forth herein.

3.    At all times relevant to this Indictment, ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein" ("ZIV ORENSTEIN"), the defendant, was a citizen and resident of Israel.  At all relevant times, ORENSTEIN acted as a principal deputy to GERY SHALON, the defendant, in furtherance of their criminal schemes, opening bank and brokerage accounts under aliases, creating and maintaining shell companies, and managing payments to and from co-conspirators and others at SHALON's direction.

4.    At all relevant times, Victim-1 was one of the world's largest financial institutions, with headquarters in New York, New York.

5.    At all relevant times, Victim-2 was one of the world's largest financial services corporations, providing mutual fund,

online stock brokerage and other services, with headquarters in Boston, Massachusetts.

6. At all relevant times, Victim-3 was a U.S.-based financial services corporation, providing online stock brokerage and other services, with headquarters in Omaha, Nebraska.

7. At all relevant times, Victim-4 was a U.S.-based financial services corporation, providing online stock brokerage and other services, with headquarters in New York, New York.

8. At all relevant times, Victim-5 was a U.S.-based financial services corporation, providing online stock brokerage and other services, with headquarters in St. Louis, Missouri.

9. At all relevant times, Victim-6 was a U.S.-based financial services corporation, providing online stock brokerage and other services, with headquarters in Queens, New York.

10. At all relevant times, Victim-7 was a U.S.-based financial services corporation, providing online stock brokerage and other services, with headquarters in Charlotte, North Carolina.

11. At all relevant times, Victim-8 was one of the world's most widely circulated financial news publications, with headquarters in New York, New York.

12. At all relevant times, Victim-9 was a financial news publisher, with headquarters in Baltimore, Maryland.

13. At all relevant times, Victim-10 was a software development firm, with headquarters in Costa Rica and offices in the United States.

14. At all relevant times, Victim-11 was a software development firm, with headquarters in Curaçao.

15. At all relevant times, Victim-12 was a merchant risk intelligence firm, with headquarters in Bellevue, Washington.

### Overview

16. From approximately 2012 to mid-2015, GERY SHALON, the defendant, orchestrated massive computer hacking crimes against U.S. financial institutions, financial services corporations, and financial news publishers, including the largest theft of customer data from a U.S. financial institution in history (the "U.S. Financial Sector Hacks"). Working with co-conspirators, including, at times, JOSHUA AARON, the defendant, SHALON directed network intrusions into Victims 1-9, among others, stealing personal information of over one hundred million customers of these companies. SHALON and his co-conspirators engaged in these crimes in furtherance of other criminal schemes, including securities market manipulation schemes that SHALON, AARON, and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the defendant, perpetrated in the United States. In particular, in an effort to artificially manipulate the price

4

of certain stocks publicly traded in the United States, SHALON
and his co-conspirators sought to market the stocks, in a
deceptive and misleading manner, to customers of the victim
companies whose contact information they had stolen in the
intrusions.  SHALON and his co-conspirators generated tens of
millions of dollars in unlawful proceeds from these schemes.

17.  In addition to directing the U.S. Financial Sector
Hacks, GERY SHALON, the defendant, directed computer network
hacks and cyberattacks against numerous United States and
foreign companies outside of the financial sector.  As set forth
below, SHALON and his co-conspirators engaged in these crimes in
furtherance of large-scale criminal businesses that SHALON and
ZIV ORENSTEIN, the defendant, operated in the United States and
other countries.  In particular, between approximately 2007 and
July 2015, SHALON owned and operated unlawful internet gambling
businesses in the United States and abroad; owned and operated
multinational payment processors for illegal pharmaceutical
suppliers, counterfeit and malicious software ("malware")
distributors, and unlawful internet casinos; and owned and
controlled Coin.mx, an illegal United States-based Bitcoin
exchange that operated in violation of federal anti-money
laundering laws.  Nearly all of these schemes, like SHALON's
securities market manipulation schemes, relied for their success

5

on computer hacking and other cybercrimes committed by SHALON and his co-conspirators.

18.   Through their criminal schemes, between in or about 2007 and in or about July 2015, GERY SHALON and his co-conspirators earned hundreds of millions of dollars in illicit proceeds, of which SHALON concealed at least $100 million in Swiss and other bank accounts.

19.   GERY SHALON, JOSHUA AARON, and ZIV ORENSTEIN, the defendants, and their co-conspirators operated their criminal schemes, and laundered their vast criminal proceeds, through at least 75 shell companies and bank and brokerage accounts around the world.  The defendants controlled these companies and accounts using aliases, and by fraudulently using approximately 200 purported identification documents, including over 30 false passports that purported to be issued by the United States and at least 16 other countries.

### Execution of the U.S. Financial Sector Hacks

20.   GERY SHALON, and JOSHUA AARON, the defendants, and their co-conspirators executed the U.S. Financial Sector Hacks using the following means and methods:

a.     In furtherance of the conspiracy, using aliases, SHALON and, at SHALON's direction, certain co-conspirators not identified herein, procured computer network infrastructure,

6

including particular servers located in Egypt, the Czech Republic, South Africa, Brazil and elsewhere, to be used to gain unlawful access to companies' computer networks and to receive data stolen from those networks during the intrusions.

b.   Also in furtherance of the conspiracy, at various times, SHALON directed a co-conspirator not identified herein ("CC-1") to execute network intrusions at particular companies in an effort to steal customer data as identified by SHALON.  On at least one occasion, as set forth below, AARON identified the company to be hacked in furtherance of the conspiracy.

c.   As a further part of the conspiracy, in connection with many of the network intrusions, AARON provided to SHALON, who provided to CC-1, AARON's own login credentials, and other information obtained by AARON, as a customer of many of the victim companies, in order for CC-1 to perform certain analysis of those victims' networks in connection with the intrusions.

d.   Also in furtherance of the conspiracy, at SHALON's direction, CC-1 hacked into the victims' network servers, on which CC-1 typically caused a particular piece of malware to be installed.  This malware provided CC-1 with persistent access to many of the victim companies' networks,

enabling CC-1 and SHALON to steal data from these victims repeatedly, sometimes over a period of many months.

e.    As a further part of the conspiracy, as CC-1 engaged in particular network intrusions at SHALON's direction, CC-1 and SHALON discussed the nature of the data CC-1 was locating and stealing at SHALON's direction, various issues CC-1 encountered while hacking into the networks, and SHALON's receipt and use of the stolen data.

f.    Also in furtherance of the conspiracy, after obtaining stolen customer data from victim companies, SHALON, AARON, and their co-conspirators used or sought to use the data in furtherance of their other criminal schemes, including securities market manipulation schemes they perpetrated with ZIV ORENSTEIN, the defendant, and others, as described below.

**The 2012-2013 Hacks**

21.    Between approximately 2012 and late 2013, GERY SHALON, the defendant, and CC-1, working at times with JOSHUA AARON, the defendant, executed the hacks of the computer networks of Victims 4-9, stealing records relating to tens of millions of customers of these institutions.  Among other things, in foreign-language electronic communications, during these hacks:

a.    SHALON bragged about the size and scope of his securities market manipulation schemes, and described to CC-1

8

his use of the stolen data in furtherance of those schemes.   For
example:

   i.  As to a particular publicly traded
stock for which SHALON, AARON and ORENSTEIN had manipulated
trading in the United States, SHALON boasted that his sale of
that stock for large profits was "a small step towards a large
empire."  As SHALON explained, "We buy them [i.e., stocks] very
cheap, perform machinations, then play with them. . ."  When CC-
1 asked, with respect to SHALON's ability to cause people in the
United States to purchase stocks, if it really was "popular in
America - buying stocks?," SHALON responded, "It's like drinking
freaking vodka in Russia."

   ii.  SHALON indicated to CC-1 that SHALON
intended to distribute "mailers," or promotions of particular
stocks, to people whose contact information CC-1 had stolen from
the victim companies.

   iii.  SHALON described contacting and lying to
people whose personal information had been obtained in the
hacks, in the course of tricking those people into buying stocks
being deceptively touted by the defendants.  In particular,
SHALON explained, individuals acting at SHALON's direction lied
to people about how their personal contact information had been

obtained, falsely claiming that the information was simply "in our investors' database."

b.     SHALON and CC-1 discussed the risk of law enforcement detection of their activities.  For example, CC-1 claimed, "[i]n Israel, you guys probably don't have to be afraid of the USA. . . meaning that even if there is some case, they won't be able to do anything"?  SHALON responded, "[t]here is nothing to be afraid of in Israel. . . ."  On another occasion, CC-1 suggested that SHALON "get[] a passport in another name. . . it will probably be safer?," to which SHALON responded that he was "doing it now."

c.     SHALON and CC-1 discussed expanding the size and scope of their network intrusions to encompass thefts of material non-public information from the financial institutions and other firms they were hacking.  For example, CC-1 noted, "the top managers in [Victim-5], can they have some interesting info in their mail [i.e., email]?  Regarding working on the stock market, etc.  It's a big company after all.  mb [Maybe] they have some secrets. . . What do you think?"  SHALON responded, "Yes, this is a very cool idea.  Some *inside* [i.e., inside, or material non-public, information].  We need to think how we can do it."

10

d.    AARON encouraged and participated in the conspiracy's hacking crimes in numerous ways.  For example:

i.    In furtherance of the schemes to hack Victims-4-8, AARON provided to SHALON, who in turn provided to CC-1, AARON's own login credentials, and in some instances, the login credentials of a friend of AARON's, as a customer of these companies, which CC-1 used in furtherance of efforts to hack into the victim company networks.  In connection with the network intrusion of Victim-8, at SHALON's direction, AARON also provided to SHALON other information that AARON was able to obtain from Victim-8 online as a Victim-8 customer.

ii.    AARON encouraged SHALON to orchestrate the hack of Victim-9.  Thereafter, SHALON informed AARON of the successful completion of the Victim-9 hack, noting that they had obtained "probably 9 million unique" customer records of Victim-9.  SHALON further told AARON, "we got what [yo]u wanted so now show me how we make out of it 100mil [i.e. $100 million] a year," which AARON agreed to do.

**The 2014 Hacks**

22.    In 2014, GERY SHALON, JOSHUA AARON and their co-conspirators orchestrated network intrusions into even bigger financial institutions, including Victims 1-3.  In particular, in or about March 2014, GERY SHALON and JOSHUA AARON, the

defendants, and their co-conspirators began their efforts to
hack into the computer networks of Victim-3.  As part of that
effort, they repeatedly attempted to access AARON's Victim-3
customer account from a particular Egypt-based computer server
(the "Egypt Server"), but they were unable to do so because,
after observing the attempts to access the account from this
server, Victim-3 locked AARON's account for online access.  In
response, in furtherance of the hack, AARON called Victim-3 and,
upon being notified that his account had been locked and asked
by a customer service representative whether AARON had been
traveling in Egypt in March 2014, AARON lied to the
representative, and claimed that he had been in Egypt.  In truth
and in fact, and as AARON well knew, AARON had not been in
Egypt, and was merely attempting to convince Victim-3 to allow
AARON and his co-conspirators to access AARON's account online
in furtherance of their efforts to hack into Victim-3.

     23.  Thereafter, in April 2014, SHALON and his co-
conspirators unlawfully accessed the network of Victim-2 by
exploiting the so-called "Heartbleed" vulnerability, which had,
at that time, just been widely identified as a previously
unrecognized security vulnerability that existed in computer
network servers on a widespread basis.  While they succeeded in
gaining access to Victim-2's network, shortly after they did so,

Victim-2 recognized and repaired the Heartbleed vulnerability in its systems.

24.  Beginning in June 2014, and ending in August 2014, SHALON, AARON and their co-conspirators executed the hack of Victim-1, during which they stole customer records of over 83 million customers of Victim-1.  To hack into Victim-1's network, they used, among others, the Egypt Server, which they had rented from a third-party company for years under an alias frequently used by SHALON, AARON and their co-conspirators in the course of their criminal schemes.  In August 2014, the day after the Victim-1 hack was first widely reported in the media, SHALON's co-conspirator abruptly canceled their longtime rental of the Egypt Server.

## The Securities Market Manipulation Schemes

25.  From in or about 2011 up to and including July 2015, GERY SHALON, JOSHUA AARON, and ZIV ORENSTEIN, the defendants, operated lucrative securities market manipulation schemes in the United States.  In furtherance of their securities market manipulation scheme, among other things:

a.  SHALON and AARON identified opportunities to partner with "promoters," including certain cooperating witnesses not identified herein ("CW-1" and "CW-2"), who identified companies whose stock would be targeted for

manipulation.  In some instances, at the time SHALON and AARON partnered with the promoters, the companies identified by the promoters were already publicly traded, and in other instances, when they partnered with the promoters, SHALON and AARON worked with the promoters to cause the companies to become publicly traded in furtherance of the scheme.  To do so, SHALON caused privately held companies to engage in "reverse mergers" with publicly traded shell corporations owned and controlled by SHALON.

       b.  Upon partnering with the promoters, SHALON, AARON and the promoters agreed upon the compensation SHALON and AARON would receive for their role in the scheme, which was typically either hundreds of thousands of dollars, or shares in the targeted stock that the defendants often sold for up to millions of dollars in profits per stock in the course of the scheme.

       c.  Also in furtherance of the securities fraud scheme, the promoters – along with, at certain times, SHALON and AARON – acquired control over all or substantially all of the free-trading shares of the targeted stock, that is, shares that the owner could trade without restriction on a national stock exchange or in the over-the-counter market.  At certain times, when they acquired such shares, SHALON and AARON held the shares in particular U.S. brokerage accounts, which were frequently

held in the names of shell companies controlled by ORENSTEIN and
which were managed in part at SHALON's direction by ORENSTEIN
using numerous aliases, false passports and other false personal
identification information.

        d.   As a further part of the scheme to defraud, after
members of the conspiracy acquired control of a substantial
portion of the free-trading shares of the targeted stock,
SHALON, AARON and their co-conspirators artificially inflated
the stock's price and trading volume through two primary
fraudulent and deceptive means.  First, certain members of the
conspiracy typically executed pre-arranged manipulative trades
to cause the stock's price to rise small amounts on successive
days.  Second, in connection with that trading, SHALON and AARON
began disseminating materially misleading, unsolicited ("spam")
messages by various means – including by email to up to millions
of recipients per day – that falsely touted the stock in order
to trick others into buying it.  SHALON and AARON engaged in the
U.S. Financial Sector Hacks in part to acquire email and mailing
addresses, phone numbers and other contact information for
potential victims to whom they could send such deceptive
communications.  As orchestrated by SHALON and AARON, these
communications contained materially false and fraudulent
statements including, for example, (i) that the stock's recent

15

trading activity reflected legitimate demand for the stock (when in truth and in fact, and as AARON and SHALON well knew, the trading activity was caused in whole or part by their co-conspirators' manipulative trading) and (ii) that the emails were being distributed and financed by certain third parties (when, in truth and in fact, and as the defendants well knew, the emails were being distributed and financed by SHALON, AARON and their co-conspirators, who controlled all or nearly all of the free-trading shares of the stock).   In addition to fraudulently promoting the stocks by email, SHALON and AARON fraudulently marketed the stocks to potential U.S. victims by mail and phone.

   e. Also in furtherance of the conspiracy, after causing the stock's price and trading volume to increase artificially during the days or weeks of the deceptive promotional campaign, members of the conspiracy (including the defendants, when they owned shares), began selling their shares in a coordinated fashion, often resulting in millions of dollars in profits per stock to members of the conspiracy.   The co-conspirators' massive coordinated sales typically placed downward pressure on the stock's price and caused its trading volume to plummet, exposing unsuspecting investors to significant losses.   SHALON, AARON and ORENSTEIN earned millions

of dollars in illicit profits this way.  For example, among the dozens of publicly traded stocks for which they successfully manipulated trading, the defendants sold their holdings in a particular stock ("Stock-1") for over $2 million at artificially inflated prices, soon after which Stock-1's price and liquidity plummeted.

f.  As a further part of the scheme to defraud, after selling shares of the manipulated stock at artificially high prices or otherwise receiving compensation from promoters for their role in the scheme, SHALON, AARON, and ORENSTEIN laundered their criminal proceeds overseas, directing millions of dollars of their criminal profits to particular accounts in Cyprus for further distribution in part to a particular Cyprus-based shell company account owned by AARON and to other overseas shell company accounts beneficially owned and controlled by SHALON and other members of the conspiracy.

**The Unlawful Internet Gambling Schemes, Hacks and Cyberattacks**

26.  In addition to operating U.S. securities market manipulation schemes, from at least in or about 2007 up to and including in or about July 2015, GERY SHALON and ZIV ORENSTEIN, the defendants, and their co-conspirators operated lucrative, unlawful internet casinos in the United States and elsewhere through hundreds of employees in multiple countries.  In the

17

United States, SHALON, ORENSTEIN and their co-conspirators knowingly operated, among others, at least 12 unlawful internet casinos (the "Casino Companies") which, through their websites, offered real-money casino gambling in violation of federal law and the laws of numerous states, including New York State. Similar to the manner in which they marketed their fraudulent stock promotions, SHALON, ORENSTEIN and their co-conspirators knowingly marketed the Casino Companies to U.S. customers through, among other things, email promotions distributed on a massive scale.  Through the Casino Companies, SHALON, ORENSTEIN, and their co-conspirators generated hundreds of millions of dollars in unlawful income, at a minimum, earning up to millions of dollars in profits per month.

27.  In furtherance of his unlawful internet gambling schemes, GERY SHALON, the defendant, and his co-conspirators engaged in massive hacks and cyberattacks against other internet gambling businesses to steal customer information, secretly review executives' emails, and cripple rival businesses.  In particular, in or about 2012, SHALON orchestrated network intrusions of competitors in order to steal his competitors' customer databases and other information.  SHALON separately directed "distributed denial of service," or DDOS, attacks, against competitors to temporarily shut down their businesses in

response to perceived misconduct by them directed at SHALON's casinos.

28.    Also in furtherance of his unlawful internet gambling businesses, GERY SHALON, the defendant, orchestrated network intrusions of Victim-10 and Victim-11, software development companies that provided operating software to SHALON's internet casinos and other such casinos around the world.  In doing so, SHALON sought to, and did, secretly obtain access to the email accounts of senior executives at both companies, reading their emails on an ongoing basis, a fact SHALON ultimately admitted to at least one of the executives whose emails he had been secretly reading.  SHALON monitored company executives' emails in order to ensure that the companies' work with SHALON's competitors did not, in SHALON's view, compromise the success of SHALON's unlawful internet gambling businesses.

### The Illicit Payment Processing Scheme and Hack

29.    From at least in or about 2011 until in or about July 2015, GERY SHALON and ZIV ORENSTEIN, the defendants, and their co-conspirators operated IDPay and Todur, multinational payment processors for criminals who sought to receive payments by credit and debit card in furtherance of their unlawful schemes. Through these payment processors, SHALON, ORENSTEIN and their co-conspirators knowingly processed credit and debit card

payments for, at a minimum, unlawful pharmaceutical
distributors, purveyors of counterfeit and malicious purported
"anti-virus" computer software, their own unlawful internet
casinos, and an illegal United States-based Bitcoin exchange
owned by SHALON.  In doing so, SHALON, ORENSTEIN and their co-
conspirators knowingly processed hundreds of millions of dollars
in transactions for criminal schemes, for which they earned a
percentage of every transaction, amounting to over $18 million
in illicit profits.

        30.  As GERY SHALON and ZIV ORENSTEIN, the defendants, well
knew, banks and credit card issuers in the United States and
elsewhere were largely unwilling to process payment transactions
for illegal activities such as internet gambling, the sale of
counterfeit pharmaceuticals, the distribution of counterfeit and
malicious software, and running an unlicensed Bitcoin exchange.
For that reason, to open and operate bank accounts in numerous
countries, including Azerbaijan, through which they processed
unlawful credit and debit card transactions, SHALON, ORENSTEIN,
and their co-conspirators variously lied to financial
institutions about the nature of their business and colluded
with corrupt international bank officials who willfully ignored
its criminal nature in order to profit from, as a co-conspirator

described it to SHALON, their payment processing "casino/soft[ware]/pharma[ceutical] cocktail."

31.  Furthermore, to deceive U.S. banks and credit card issuers into authorizing their illicit credit and debit card payment transactions, GERY SHALON and ZIV ORENSTEIN, the defendants, and their co-conspirators deliberately misidentified and miscoded those transactions, in violation of bank and credit card company rules and regulations.  For example, through their payment processing scheme, SHALON, ORENSTEIN and their co-conspirators arranged for money received from United States gamblers to be disguised as payments to phony online non-gambling merchants, such as wedding dress and pet supply stores, in order to trick U.S. and other financial institutions into allowing the transactions to be completed.

32.  At relevant times, in an effort to ensure compliance with their regulations, major United States credit card companies monitored and investigated merchant activity that appeared to be in furtherance of criminal schemes or otherwise designed to circumvent their regulations.  In the course of that work, credit card companies repeatedly identified bank accounts which were receiving credit and debit card payments for illicit pharmaceuticals and other criminal goods and services, and which, unbeknownst to the credit card companies, were operated

by GERY SHALON and ZIV ORENSTEIN, the defendants, in furtherance of their unlawful payment processing scheme.  In so doing, the credit card companies imposed millions of dollars in penalties on the financial institutions through which SHALON and ORENSTEIN processed these unlawful credit and debit card payments, and SHALON and ORENSTEIN, in turn, paid those amounts to the financial institutions to cover the penalties.

33.  To avoid further financial penalties and processing shutdowns, and to evade law enforcement detection of their illicit payment processing scheme, GERY SHALON and ZIV ORENSTEIN, the defendants, (1) worked continuously to obtain new bank accounts, and establish new phony merchants, to replace those that were periodically shut down by banks and credit card companies for engaging in unlawful activity; (2) monitored credit card transactions processed through their payment processing business to attempt to discern which, if any, were undercover transactions made on behalf of credit card companies attempting to identify unlawful merchants; and (3) lied repeatedly to banks that discovered illicit transactions conducted in their accounts by pretending they were surprised and otherwise unaware of the illicit nature of the transactions, a deceit that SHALON and ORENSTEIN discussed openly with each other and co-conspirators.

22

34.   The efforts of GERY SHALON and ZIV ORENSTEIN, the defendants, to evade detection of their criminal payment processing activity went beyond the defensive measures described above.  Beginning in or about 2012, SHALON and his co-conspirators hacked into the computer networks of Victim-12, a U.S. company which assessed merchant risk and compliance for credit card issuers and others, including by detecting merchants that accepted credit card payments for unlawful goods or services.  Thereafter, on an ongoing basis, SHALON and his co-conspirators monitored Victim-12's detection efforts, including reading emails of Victim-12 employees, so they could take steps to evade detection by Victim-12 of their unlawful payment processing scheme.  In particular, through their unlawful intrusion into Victim-12's network, SHALON and his co-conspirators determined which credit and debit card numbers Victim-12 employees were using to make undercover purchases of illicit goods in the course of their effort to detect unlawful merchants.  Upon identifying those credit and debit card numbers, SHALON and his co-conspirators blacklisted the numbers from their payment processing business, automatically declining any transaction for which payment was offered through one of those credit or debit card numbers.

23

### The Unlawful Bitcoin Exchange

35.  In addition to the other unlawful schemes set forth above, from in or about 2013 to in or about July 2015, GERY SHALON, the defendant, knowingly owned Coin.mx, a Bitcoin exchange service, which was operated by co-conspirators in the United States at SHALON's direction in violation of federal anti-money laundering ("AML") registration and reporting laws and regulations.  Through Coin.mx, SHALON and his co-conspirators enabled their customers to exchange cash for Bitcoins, charging a fee for their service.  In total, between approximately October 2013 and July 2015, Coin.mx exchanged millions of dollars for Bitcoins on behalf of its customers.

36.  GERY SHALON, the defendant, and his co-conspirators engaged in substantial efforts to evade detection of their unlawful Bitcoin exchange scheme by operating through a phony front-company, "Collectables Club," and maintaining a corresponding phony "Collectables Club" website.  In doing so, they sought to trick the major financial institutions through which they operated into believing their unlawful Bitcoin exchange business was simply a members-only association of individuals who discussed, bought, and sold collectable items, such as stamps and sports memorabilia.  In approximately 2014, in an effort to evade potential scrutiny from these institutions

24

and others, SHALON's co-conspirators acquired control of a federal credit union (the "Credit Union"), installed co-conspirators on the Credit Union's Board of Directors, and transferred Coin.mx's banking operations to the Credit Union, which SHALON's co-conspirators operated, at least until early 2015, as a captive bank for their unlawful business.

### Statutory Allegations

### COUNT ONE
### (Conspiracy to Commit Computer Hacking: U.S. Financial Sector Hacks)

37.  The allegations contained in paragraphs 1-24 of this Indictment are repeated and realleged as if fully set forth herein.

38.  From at least in or about 2012, up to and including at least July 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," and JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, computer hacking, in violation of Title 18, United States Code, Sections 1030(a)(2)(A) and 1030(a)(2)(C).

25

39.   It was a part and an object of the conspiracy that
GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a
"Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham,"
and JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the defendants,
and others known and unknown, would and did intentionally access
a computer without authorization and exceed authorized access,
and thereby obtain information contained in a financial record
of a financial institution, for purposes of commercial advantage
and private financial gain, and in furtherance of a criminal act
in violation of the laws of the United States, to wit, the
securities and wire fraud crimes charged in Counts Four through
Thirteen of this Indictment, and the value of the information
obtained was greater than $5,000, in violation of Title 18,
United States Code, Sections 1030(a)(2)(A) and 1030(c)(2)(B).

40.   It was a further part and an object of the conspiracy
that GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel,"
a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher
Engeham," and JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the
defendants, and others known and unknown, would and did
intentionally access a computer without authorization and exceed
authorized access, and thereby did obtain information from a
protected computer, for purposes of commercial advantage and
private financial gain, and in furtherance of a criminal act in

26

violation of the laws of the United States, to wit, the securities and wire fraud crimes charged in Counts Four through Thirteen of this Indictment, and the value of the information obtained was greater than $5,000, in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(B).

Overt Acts

41.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about June 2012, JOSHUA AARON, the defendant, provided information regarding Victim-9's websites and servers to GERY SHALON, the defendant.

b.   In at least in or about June 2012, SHALON caused the unauthorized access to, and theft of customer data from, the computer network of Victim-9.

c.   In or about October 2012, AARON provided login credentials for a Victim-5 account to SHALON.

d.   In or about November 2012, AARON provided login credentials for a Victim-7 account to SHALON.

e.   In or about November 2012, AARON provided login credentials for a Victim-4 account to SHALON.

f.    In or about November 2012, AARON provided login credentials for a Victim-6 account to SHALON.

g.    In or about December 2012, SHALON caused the unauthorized access to, and theft of customer data from, Victim-6, including by wire communications through the Southern District of New York.

h.    In or about August 2013, SHALON caused the unauthorized access to, and theft of customer data from, the computer network of Victim-8.

i.    On or about August 30, 2013, while hacking into Victim-8's computer network, CC-1 told SHALON, in electronic communications, in substance, that CC-1 had located 10 million email addresses of Victim-8 customers.

j.    During at least in or about September 2013 to in or about February 2014, SHALON caused the unauthorized access to, and theft of customer data from, the computer network of Victim-5.

k.    During at least in or about September 2013 to in or about November 2013, SHALON caused the unauthorized access to, and theft of customer data from, the computer network of Victim-7.

l.    In or about December 2013, SHALON caused the unauthorized access to, and theft of customer data from, the computer network of Victim-4.

m.    On or about December 7, 2013, while hacking into Victim-4's computer network, CC-1 told SHALON, in electronic communications, in substance, that CC-1 had located 15 million email addresses of Victim-4 customers.

n.    In or about April 2014, SHALON, the defendant, caused Victim-2's computer network to be accessed without authorization.

o.    From in or about June 2014, to in or about August 2014, SHALON caused the unauthorized access to, and theft of customer data from, the computer network of Victim-1.

(Title 18, United States Code, Section 371).

## COUNT TWO
(Computer Hacking: Victim-1)

The Grand Jury further charges:

42.  The allegations contained in paragraphs 1-25 and 41 of this Indictment are repeated and realleged as if fully set forth herein.

43.  From at least in or about June 2014, up to and including at least in or about August 2014, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe

29

Mousset," a/k/a "Christopher Engeham," and JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the defendants, and others known and unknown, willfully and knowingly, did intentionally access a computer without authorization and exceed authorized access, and thereby obtain information contained in a financial record of a financial institution and from a protected computer, for purposes of commercial advantage and private financial gain, and in furtherance of a criminal act in violation of the laws of the United States, to wit, the securities and wire fraud crimes charged in Counts Four through Thirteen of this Indictment, and the value of the information obtained was greater than $5,000, to wit, SHALON and AARON worked with others to hack into the computer network of Victim-1 and steal personal information of tens of millions of Victim-1 customers in furtherance of fraud schemes perpetrated by SHALON and AARON.

(Title 18, United States Code, Sections 1030(a)(2)(A), 1030(c)(2)(B), and 2.)

### COUNT THREE
(Computer Hacking: Victim-8)

The Grand Jury further charges:

44.    The allegations contained in paragraphs 1-25 and 41 of this Indictment are repeated and realleged as if fully set forth herein.

45.  From at least in or about late 2013, up to and including in or about May 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," and JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the defendants, and others known and unknown, willfully and knowingly, did intentionally access a computer without authorization and exceed authorized access, and thereby obtain information contained in a financial record of a financial institution and from a protected computer, for purposes of commercial advantage and private financial gain, and in furtherance of a criminal act in violation of the laws of the United States, to wit, the securities and wire fraud crimes charged in Counts Four through Thirteen of this Indictment, and the value of the information obtained was greater than $5,000, to wit, SHALON and AARON worked with others to hack into the computer network of Victim-8 and steal personal information of millions of Victim-8 customers in furtherance of fraud schemes perpetrated by SHALON and AARON.

> (Title 18, United States Code, Sections 1030(a)(2)(C),
> 1030(c)(2)(B), and 2.)

## COUNT FOUR
(Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

46. The allegations contained in paragraphs 1-25 and 41 of this Indictment are repeated and realleged as if fully set forth herein.

47. From at least in or about 2011, up to and including in or about July 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," and JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Section 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

48. It was a part and an object of the conspiracy that GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, and others known and unknown, willfully and knowingly, directly and

32

indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, to wit, by email and telephone communications from overseas to New York, New York and elsewhere, the defendants engaged in a scheme to artificially manipulate the price and trading volume of numerous stocks publicly traded in the United States.

### Overt Acts

49.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others,

were committed in the Southern District of New York and
elsewhere:

      a.    In or about mid-2011, GERY SHALON, a/k/a "Garri
Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe
Mousset," a/k/a "Christopher Engeham," the defendant, caused a
brokerage account to be opened under an alias and using a copy
of a false passport sent to a securities brokerage firm ("Firm-
1") in Arizona.

      b.    On or about June 12, 2011, by email from outside
the United States to a securities brokerage firm located in New
York, New York ("Firm-2"), ZIV ORENSTEIN, a/k/a "Aviv Stein,"
a/k/a "John Avery," the defendant, opened an account at Firm-2
in the name "Entersa Limited" using an alias and a false
passport (the "Firm-2 Entersa Account").

      c.    On or about June 26, 2011, in order to obtain
trading authority over an account in the name "Entersa Limited"
("the Firm-1 Entersa Account") for JOSHUA SAMUEL AARON, a/k/a
"Mike Shields," the defendant, SHALON informed Firm-1 by email
that "Mike Shields" was an "advisor" to Entersa.

      d.    In or about early January 2012, AARON transferred
2.5 million shares of Stock-1 into the Firm-2 Entersa Account in
New York, New York.

e.   In or about late January 2012, SHALON and AARON caused spam emails touting Stock-1, including false statements about the cause of the increase in Stock-1's trading volume, to be widely disseminated to recipients throughout the United States.

f.   From on or about January 30, 2012 to on or about February 13, 2012, Entersa's Stock-1 holdings at Firm-2, located in New York, New York, were liquidated and, at the direction of AARON, Firm-2 wired over $1.1 million in proceeds to a bank account in Cyprus in the name of Entersa ("the Entersa Cyprus Account").

g.   In or about late 2011, AARON discussed with CW-2, by telephone, the manner in which AARON wanted CW-2 to manipulate the price of a particular publicly traded stock ("Stock-2").

h.   In or about February 2012, SHALON and AARON met with CW-1 in person in Kiev, Ukraine, in furtherance of schemes to manipulate the price and sales of the publicly traded stock of at least two companies ("Stock-3" and "Stock-4").

i.   In or about October 2012, AARON caused spam emails touting Stock-3, including false statements that Stock-3's trading volume was increasing due to investors "becoming

35

aware of the great story behind [Stock-3]," to be widely disseminated.

j.    In or about mid-2011, at SHALON's direction, another individual not charged herein wired over $80,000 of SHALON and AARON's compensation for the unlawful manipulation of the price and trading volume of a particular publicly traded stock ("Stock 5") from the Entersa Cyprus Account to a bank account maintained by AARON in Cyprus in the name of "Warmkal Trading Limited" ("AARON's Warmkal Account").

k.    In or about June 2011, by email and telephone, AARON informed a representative of Firm-2 in New York, New York that email promotional campaigns run by AARON and others had resulted in substantial trading volume in ten particular publicly traded stocks (not including Stocks 1-7) on particular dates.

l.    In or about May 2014, ORENSTEIN, by email, sent to SHALON and AARON two documents signed in the name of an alias used by SHALON, AARON, and ORENSTEIN, which effected a transfer of shares of a particular publicly traded stock ("Stock-6").

m.    In or about May 2014, ORENSTEIN, by email, sent to SHALON and AARON documents signed in the name of an individual – in fact, an alias used by the defendants – in which

this purported individual accepted a position on the Board of
Directors of the company traded publicly as Stock-7.

          n.    In or about May 2015, in furtherance of the
scheme to manipulate Stock-7, a particular brokerage firm in the
United States received a form signed in the name of the
purported account owner – in fact, an alias used by the
defendants – appointing "Mike Shields," that is, AARON, as agent
and attorney-in-fact for the account.

          (Title 18, United States Code, Section 371.)

### COUNT FIVE
(Conspiracy to Commit Wire Fraud: Securities Market
Manipulation Scheme)

The Grand Jury further charges:

    50.    The allegations contained in paragraphs 1-25, 41, and
49 of this Indictment are repeated and realleged as if fully set
forth herein.

    51.    From at least in or about 2011, up to and including in
or about July 2015, in the Southern District of New York and
elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a
"Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a
"Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike
Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John
Avery," the defendants, and others known and unknown, willfully
and knowingly, combined, conspired, confederated and agreed

together and with each other to violate Title 18, United States Code, Section 1343.

52. It was a part and an object of the conspiracy that the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, SHALON, AARON and ORENSTEIN perpetrated schemes to manipulate the price and trading volume of numerous publicly traded stocks, and in doing so, exchanged emails with Firm-2 in New York, New York from overseas and caused Firm-2 to send wire transfers to, and receive wire transfers from, an overseas bank account.

(Title 18, United States Code, Section 1349.)

## COUNTS SIX THROUGH TWELVE
(Securities Fraud)

The Grand Jury further charges:

53. The allegations contained in paragraphs 1-25, 41 and 49 of this Indictment are repeated and realleged as if fully set forth herein.

54.    On or about the dates set forth below, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and the mails and facilities of national securities exchanges, did use and employ, and cause to be used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, in or about the time periods set forth below, the defendants participated in schemes to manipulate the price and trading volume of the following publicly traded securities:

| COUNT | SECURITY | APPROXIMATE TIME PERIOD |
|-------|----------|--------------------------|
| SIX | Stock-1 | October 2011 to April 2012 |
| SEVEN | Stock-2 | August 2011 to March 2012 |
| EIGHT | Stock-3 | December 2011 to October 2012 |
| NINE | Stock-4 | March 2012 to August 2012 |
| TEN | Stock-5 | March 2012 to September 2012 |
| ELEVEN | Stock-6 | March 2014 to December 2014 |
| TWELVE | Stock-7 | April 2014 to July 2015 |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17,
Code of Federal Regulations, Section 240.10b-5, and Title 18,
United States Code, Section 2.)

## COUNT THIRTEEN
(Wire Fraud)

The Grand Jury further charges:

55.   The allegations contained in paragraphs 1-25, 41, and 49 of this Indictment are repeated and realleged as if fully set forth herein.

56.   From at least in or about 2011, up to and including in or about July 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, SHALON, AARON and ORENSTEIN perpetrated schemes to manipulate the price and trading volume of numerous publicly traded stocks, and in doing so, exchanged emails from overseas with Firm-2, located in New

York, New York, and caused Firm-2 to send wire transfers to, and receive wire transfers from, an overseas bank account.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOURTEEN
(Identification Document Fraud Conspiracy)

The Grand Jury further charges:

57. The allegations contained in paragraphs 1-25, 41, and 49 of this Indictment are repeated and realleged as if fully set forth herein.

58. From at least in or about 2011, up to and including in or about July 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, together with others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, identification document fraud, in violation of Title 18, United States Code, Sections 1028(a)(2), 1028(a)(3), and 1028(a)(7).

59. It was a part and an object of the conspiracy that GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN,

a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, and
others known and unknown, willfully and knowingly would and did
transfer an identification document, authentication feature, and
a false identification document, in and affecting interstate and
foreign commerce, knowing that such document and feature was
stolen and produced without lawful authority, in violation of
Title 18, United States Code, Section 1028(a)(2).

60.  It was further a part and an object of the conspiracy
that GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabi,"
a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA
SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a
"Aviv Stein," a/k/a "John Avery," the defendants, and others
known and unknown, willfully and knowingly would and did possess
with intent to use unlawfully and transfer unlawfully five and
more identification documents, authentication features, and
false identification documents, in and affecting interstate and
foreign commerce, in violation of Title 18, United States Code,
Section 1028(a)(3).

61.  It was further a part and an object of the conspiracy
that GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel,"
a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher
Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV
ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the

defendants, and others known and unknown, willfully and knowingly would and did transfer, possess, and use, without lawful authority, a means of identification of another person with the intent to commit, and to aid and abet, and in connection with, unlawful activity that constitutes a violation of federal law, in violation of Title 18, United States Code, Section 1028(a)(7).

Overt Acts

62.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about March 29, 2011, to open the Firm-1 Entersa account using an alias, ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendant, emailed to Firm-1 a copy of a purported passport of the United Kingdom ("False Name-1 UK Passport").

b.   In or about June 2011, to obtain trading authority for JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the defendant, over the Firm-1 Entersa account, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," and AARON caused Firm-1 to receive false personal identification information, including a fake

44

Florida driver's license and a Social Security Number belonging
to another person.

        c.    In or about June 2011, to open an account at
Firm-1, SHALON caused Firm-1 to receive a false purported
passport of France.

        d.    On or about June 12, 2011, to open the Firm-2
Entersa account, ORENSTEIN sent an email from outside the United
States to Firm-2 in New York, New York, containing a false
purported passport of the United Kingdom, which bore a different
name than that of the False Name-1 UK Passport (the "False Name-
2 UK Passport").

        e.    On or about August 4, 2011, by email, AARON
provided the False Name-2 UK Passport to Firm-1.

        f.    On or about March 1, 2011, working with SHALON,
ORENSTEIN provided a copy of a fake United States passport to a
financial institution in Azerbaijan.

        g.    On or about July 21, 2013, ORENSTEIN sent an
email to a co-conspirator not identified herein instructing the
co-conspirator to alter the name, identification information,
picture, and signature of a purported Latvian passport.

        h.    On or about October 9, 2014, ORENSTEIN caused a
brokerage firm in the United States to receive a purported
identification document from the Ukraine in a particular name

("False Name-3"), a purported Serbian passport in a particular name ("False Name-4") and documents purportedly executed by False Name-3 and False Name-4 appointing "Mike Shields," that is, AARON, as agent and attorney-in-fact for accounts held in False Name-3 and False Name-4.

(Title 18, United States Code, Sections 1028(f) and 2.)

## COUNT FIFTEEN
(Aggravated Identity Theft)

The Grand Jury further charges:

63.   The allegations contained in paragraphs 1-25, 41, 49, and 62 of this Indictment are repeated and realleged as if fully set forth herein.

64.   From in or about mid-2011 until in or about July 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, willfully and knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Section 1028A(c), to wit, SHALON AARON, and ORENSTEIN used numerous means of identification of other individuals, and the Social Security Number of another person, to commit the securities and

46

wire fraud crimes charged in Counts Four through Thirteen of
this Indictment.

(Title 18, United States Code, Sections 1028A and 2.)

## COUNT SIXTEEN
(Unlawful Internet Gambling Enforcement Act Conspiracy)

The Grand Jury further charges:

65.   The allegations contained in paragraphs 1, 3, 13-14,
17-19, and 26-28 of this Indictment are repeated and realleged
as if fully set forth herein.

66.   From at least in or about 2007, up through and
including in or about July 2015, in the Southern District of New
York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili,"
a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a
"Christopher Engeham," and ZIV ORENSTEIN, a/k/a "John Avery,"
a/k/a "Aviv Stein," the defendants, together with others known
and unknown, unlawfully, willfully, and knowingly did combine,
conspire, confederate, and agree together and with each other to
commit offenses against the United States, to wit, violations of
Title 31, United States Code, Section 5363.

67.   It was a part and an object of the conspiracy that
GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a
"Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham,"
and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the
defendants, and others known and unknown, unlawfully, willfully,

and knowingly, with persons engaged in the business of betting and wagering, would and did knowingly accept, in connection with the participation of another person in unlawful internet gambling, to wit, gambling in violation of New York Penal Law Sections 225.00 and 225.05 and the laws of other states where the gambling businesses operated, credit, and the proceeds of credit, extended to and on behalf of such other person, including credit extended through the use of a credit card, and an electronic fund transfer and the proceeds of an electronic fund transfer from and on behalf of such other person, and a check, draft and similar instrument which is drawn by and on behalf of such other person and is drawn on and payable at and through any financial institution, in violation of Title 31 United States Code, Sections 5363 and 5366.

### Overt Acts

68.   In furtherance of the conspiracy and to effect the illegal object thereof, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

48

a.    On or about October 1, 2007, by email, SHALON informed another individual that his internet casino "is one of the only casinos accepting players worldwide including the United States."

b.    On or about January 13, 2010, by email, SHALON arranged to send advertisements promoting SHALON's internet casinos by U.S. mail to up to one hundred thousand U.S. residents in over 30 states, including the Southern District of New York.

c.    On or about December 8, 2013, ORENSTEIN, by email, informed SHALON that "casino turnover" for the month of October 2013 was $78,910,099, which was "almost no change" from a given month approximately one year earlier, July 2012, when monthly "casino turnover" was $75,259,052.

d.    On or about December 8, 2013, by email, ORENSTEIN informed SHALON of the monthly salary cost for approximately 270 employees of their casino business in Ukraine and Hungary.

e.    On or about November 17, 2014, by email, ORENSTEIN attempted to address problems experienced by United States-based players making deposits to gamble at one of SHALON's internet casinos.

49

f.    On or about January 28, 2015, by email, SHALON approved of a promotion to be sent to United States-based players for one of SHALON's internet casinos.

g.    In or about June 2015, ORENSTEIN informed SHALON, by email, that casino "profits" for the month of February 2015 were $7,288,828.

h.    Between approximately June 26, 2015, and July 7, 2015, in the Southern District of New York and elsewhere, a federal law enforcement agent, acting in an undercover capacity, gambled at one of SHALON's internet casinos with real money.

(Title 18, United States Code, Section 371.)

### COUNT SEVENTEEN
(Unlawful Internet Gambling Enforcement Act)

The Grand Jury further charges:

69.   The allegations contained in paragraphs 1, 3, 13-14, 17-19, 26-28, and 68 of this Indictment are repeated and realleged as if fully set forth herein.

70.   From in or about 2007 up to and including in or about July 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the defendants, persons engaged in the business of betting and wagering and persons aiding and abetting persons in the business

of betting and wagering, did knowingly accept, in connection

with the participation of another person in unlawful internet

gambling, to wit, gambling through the Casino Companies in

violation of New York Penal Law Sections 225.00 and 225.05 and

the laws of other states where the Casino Companies operated,

credit, and the proceeds of credit, extended to and on behalf of

such other person, including credit extended through the use of

a credit card, and an electronic fund transfer and the proceeds

of an electronic fund transfer from and on behalf of such other

person, and a check, draft and similar instrument which was

drawn by and on behalf of such other person and was drawn on and

payable at and through any financial institution.

(Title 31, United States Code, Sections 5363 and 5366; Title 18
United States Code, Section 2.)

### COUNT EIGHTEEN
(Operation of an Illegal Gambling Business)

The Grand Jury further charges:

71.  The allegations contained in paragraphs 1, 3, 13-14,

17-19, 26-28, and 68 of this Indictment are repeated and

realleged as if fully set forth herein.

72.  From at least in or about 2007 up to and including in

or about July 2015, in the Southern District of New York and

elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a

"Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a

"Christopher Engeham," and ZIV ORENSTEIN, a/k/a "John Avery,"
a/k/a "Aviv Stein," the defendants, willfully, and knowingly did
conduct, finance, manage, supervise, direct, and own all and
part of an illegal gambling business, namely a business that
engaged in and facilitated online casino gambling, in violation
of New York State Penal Law Sections 225.00 and 225.05 and the
law of other states in which the business operated, and which
business involved five and more persons who conducted, financed,
managed, supervised, directed, and owned all and part of that
business, and which business had been and had remained in
substantially continuous operation for a period in excess of
thirty days and had gross revenues of $2,000 in a single day, to
wit, the defendants operated and aided and abetted the operation
of the Casino Companies.

(Title 18, United States Code, Sections 1955 and 2.)

### COUNT NINETEEN
(Conspiracy to Commit Wire Fraud: Unlawful Payment Processing)

The Grand Jury further charges:

73.  The allegations contained in paragraphs 1, 3, 15, 17-
19, and 29-34 of this Indictment are repeated and realleged as
if fully set forth herein.

74.  From at least in or about 2011, up to and including on
or about July 2015, in the Southern District of New York and
elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a

"Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a

"Christopher Engeham," and ZIV ORENSTEIN, a/k/a "John Avery,"

a/k/a "Aviv Stein," the defendants, and others known and

unknown, unlawfully, willfully, and knowingly did combine,

conspire, confederate, and agree together and with each other to

commit wire fraud, in violation of Title 18, United States Code,

Section 1343.

75.   It was a part and an object of the conspiracy that

GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a

"Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham,"

and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the

defendants, and others known and unknown, willfully and

knowingly, having devised and intending to devise a scheme and

artifice to defraud, and for obtaining money and property by

means of false and fraudulent pretenses, representations, and

promises, would and did transmit and cause to be transmitted by

means of wire, radio, and television communication in interstate

and foreign commerce, writings, signs, signals, pictures, and

sounds for the purpose of executing such scheme and artifice, in

violation of Title 18, United States Code, Section 1343, to wit,

the defendants participated in a scheme involving wire

communications to deceive financial institutions and other

financial intermediaries into processing and authorizing

payments to and from (i) the Casino Companies and United States gamblers, (ii) distributors of unlicensed pharmaceuticals around the world, (iii) purveyors of counterfeit and malicious purported anti-virus software in the United States, and (iv) Coin.mx, an unlicensed United States-based Bitcoin exchange, by disguising the transactions to create the false appearance that they were unrelated to gambling, unlicensed pharmaceutical distribution, sales of counterfeit and malicious software, and the exchange of money for Bitcoins, respectively, and thereby to obtain money of, or under the custody and control of, those financial institutions and intermediaries.

(Title 18, United States Code, Section 1349.)

### COUNT TWENTY
(Conspiracy to Operate an Unlicensed Money Transmitting Business)

The Grand Jury further charges:

76.  The allegations contained in paragraphs 1, 17-19, and 35-36 of the Indictment are repeated and realleged as if fully set forth herein.

77.  From at least in or about April 2013 to at least in or about July 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," the defendant, and others known and

54

unknown, unlawfully, willfully and knowingly, did combine,
conspire, confederate, and agree together and with each other to
commit an offense against the United States, to wit, to violate
Title 18, United States Code, Section 1960.

78.   It was a part and an object of the conspiracy that
GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a
"Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham,"
the defendant, and others known and unknown, unlawfully,
willfully and knowingly would and did conduct, control, manage,
supervise, direct, and own all and part of an unlicensed money
transmitting business, to wit, Coin.mx, d/b/a "Collectables
Club," d/b/a "Currency Enthusiasts" ("Coin.mx") in violation of
Title 18, United States Code, Section 1960.

<u>Overt Acts</u>

79.   In furtherance of the conspiracy and to effect the
illegal object thereof, GERY SHALON, a/k/a "Garri
Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe
Mousset," a/k/a "Christopher Engeham,"  the defendant, and
others known and unknown, committed the following overt acts,
among others, in the Southern District of New York and
elsewhere:

a.   On or about November 22, 2013, SHALON agreed with
a co-conspirator not named herein to miscode credit card

transactions processed on behalf of Coin.mx in an effort to avoid detection of the unlawful Coin.mx scheme by credit card issuers.

b.    From in or about December 2013, through at least in or about November 2014, in an effort to promote Coin.mx and expand its customer base, a co-conspirator not identified herein exchanged numerous emails with a company in the Southern District of New York.

c.    In or about August 2014, in the Southern District of New York, a co-conspirator not identified herein opened a bank account for use by Coin.mx.

d.    In September 2014, SHALON met with certain co-conspirators not identified herein and discussed the operation of Coin.mx.

e.    From in or about November 2014, through at least in or about December 2014, a co-conspirator not named herein exchanged numerous emails from the Southern District of New York with individuals outside the Southern District of New York in furtherance of their efforts to secure bank accounts through which Coin.mx could operate unlawfully.

(Title 18, United States Code, Section 371.)

## COUNT TWENTY-ONE
(Operation of an Unlicensed Money Transmitting Business)

The Grand Jury further charges:

80. The allegations contained in paragraphs 1, 3, 17-19 35-36, and 79 of the Indictment are repeated and realleged as if fully set forth herein.

81. From at least in or about April 2013 to at least in or about July 2015, in the Southern District of New York and elsewhere, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," the defendant, willfully and knowingly did conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, to wit, Coin.mx, an internet-based Bitcoin exchange business, which failed to comply with the money transmitting business registration requirements set forth in federal law and regulations.

(Title 18, United States Code, Sections 1960 and 2.)

## COUNT TWENTY-TWO
(Money Laundering Conspiracy: Securities Market Manipulation Scheme)

The Grand Jury further charges:

82. The allegations contained in paragraphs 1-25, 41, 49, and 62 of this Indictment are repeated and realleged as if fully set forth herein.

83.   From at least 2011, up to and including in or about
July 2015, in the Southern District of New York and elsewhere,
GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a
"Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham,"
JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN,
a/k/a "John Avery," a/k/a "Aviv Stein," the defendants, and
others known and unknown, willfully and knowingly did combine,
conspire, confederate, and agree together and with each other to
violate Title 18, United States Code, Section 1956(a)(1)(B)(i)
and 1957(a).

84.   It was a part and an object of the conspiracy that
GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabi," a/k/a
"Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL
AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "John
Avery," a/k/a "Aviv Stein," the defendants, and others known and
unknown, in an offense involving and affecting interstate and
foreign commerce, knowing that the property involved in certain
financial transactions represented the proceeds of some form of
unlawful activity, willfully and knowingly would and did conduct
and attempt to conduct such financial transactions which in fact
involved the proceeds of specified unlawful activity, to wit,
the proceeds of the wire fraud and securities fraud offenses
charged in Counts Four through Thirteen of this Indictment,

knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control or the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

85. It was a further part and an object of the conspiracy that GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the defendants, and others known and unknown, within the United States and involving United States persons, in an offense involving and affecting interstate and foreign commerce, willfully and knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, the proceeds of the wire fraud and securities fraud offenses charged in Counts Four through Thirteen of this Indictment, in violation of Title 18, United States Code, Section 1957.

Overt Acts

86.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about February 5, 2012, JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the defendant, by email instructed Firm-2, located in New York, New York, to wire $241,000 from the Entersa Firm-2 account to the Entersa Cyprus Account.

b.   On or about February 8, 2012, by email, AARON instructed Firm-2, in New York, New York, to wire $191,000 from the Entersa Firm-2 account to the Entersa Cyprus Account.

c.   On or about February 13, 2012, by email, AARON instructed Firm-2 to wire $542,000 from the Entersa Firm-2 account to the Entersa Cyprus Account.

d.   On or about August 1, 2011, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," the defendant, instructed an individual not identified herein to transfer $27,560 from the Entersa Cyprus Account to Aaron's Warmkal Account.

e.   On or about June 12, 2011, by email from outside the United States to Firm-2, ZIV ORENSTEIN, a/k/a "Aviv Stein,"

60

a/k/a "John Avery," the defendant, opened the Firm-2 Entersa
using an alias and a false passport.

(Title 18, United States Code, Section 1956(h).)

### COUNT TWENTY-THREE
(Money Laundering Conspiracy: Unlawful Internet Gambling and
Payment Processing)

The Grand Jury further charges:

87.   The allegations contained in paragraphs 1, 3, 13-14,
17-19, 26-32, and 68 of this Indictment are repeated and
realleged as if fully set forth herein.

88.   From at least 2011, up to and including in or about
July 2015, in the Southern District of New York and elsewhere,
"Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a
"Phillipe Mousset," a/k/a "Christopher Engeham," and ZIV
ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the
defendants, and others known and unknown, willfully and
knowingly did combine, conspire, confederate, and agree together
and with each other to violate Title 18, United States Code,
Section 1956(a)(1)(B)(i) and 1957(a).

89.   It was a part and an object of the conspiracy that
GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a
"Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham,"
and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the
defendants, and others known and unknown, in an offense

61

involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, willfully and knowingly would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of the gambling and wire fraud offenses charged in Counts Sixteen through Nineteen of this Indictment, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control or the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

90.     It was a further part and an object of the conspiracy that GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the defendants, and others known and unknown, within the United States and involving United States persons, in an offense involving and affecting interstate and foreign commerce, willfully and knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified

unlawful activity, to wit, the proceeds of the gambling and wire fraud offenses charged in Counts Sixteen through Nineteen of this Indictment.

Overt Acts

91.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about 2013, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," the defendant, caused millions of dollars in unlawful profits from the operation of his payment processing business to be sent from bank accounts in Azerbaijan to a Swiss bank account owned and controlled by SHALON in the name of another shell company.

b.   On or about June 26, 2015, after an undercover law enforcement agent in the Southern District of New York gambled at one of SHALON's internet casinos using a debit card, SHALON and his co-conspirators caused the agent's debit card statement falsely to reflect that the money spent by that agent through the casino website was for a purchase at "houses4petz.com," a phony merchant.

63

c.    Throughout in or about 2012 and 2013, SHALON and ZIV ORENSTEIN, a/k/a "John Avery," a/k/a "Aviv Stein," the defendant, caused millions of dollars in unlawful gambling proceeds and profits to be sent to, from and between Cyprus-based bank accounts in the names of shell companies, including shell companies controlled by SHALON and ORENSTEIN using aliases and false identification.

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

92.    As a result of committing one or more of the offenses alleged in Counts One through Three of this Indictment, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham", and JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B) any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the offenses alleged in Counts One through Three and, pursuant to Title 18, United States Code, Section 1030(i), any interest in any personal property that was used or intended to be used to commit or facilitate the commission of the offenses alleged in Counts One through Three, and any property, real or personal, constituting or derived from any proceeds obtained

64

directly or indirectly as a result of the offenses alleged in Counts One through Three.

93. As a result of committing one or more of the offenses charged in Counts Four through Thirteen, and Eighteen through Twenty, of this Indictment, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, which constitutes or is derived from proceeds traceable to the offenses alleged in Counts Four through Thirteen, and Eighteen through Twenty.

94. As a result of committing the offense alleged in Count Fourteen of this Indictment, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabriel," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," JOSHUA SAMUEL AARON, a/k/a "Mike Shields," and ZIV ORENSTEIN, a/k/a "Aviv Stein," a/k/a "John Avery," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting or derived from proceeds obtained directly or indirectly as a result of the offense

alleged in Count Fourteen and, pursuant to Title 18, United States Code, Section 1028(b)(5), any personal property used or intended to be used to commit the offense alleged in Count Fourteen.

95. As a result of committing one or more of the offenses alleged in Counts Twenty One through Twenty Three of this Indictment, GERY SHALON, a/k/a "Garri Shalelashvili," a/k/a "Gabi," a/k/a "Phillipe Mousset," a/k/a "Christopher Engeham," and JOSHUA SAMUEL AARON, a/k/a "Mike Shields," the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the offenses alleged in Counts Twenty One through Twenty Three, or any property traceable to such property.

## Substitute Assets Provision

96.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982,1028 & 1030;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

67

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

GERY SHALON,
a/k/a "Garri Shalelashvili," a/k/a
"Gabriel," a/k/a "Gabi," a/k/a "Phillipe
Mousset," a/k/a "Christopher Engeham,"
JOSHUA SAMUEL AARON,
a/k/a "Mike Shields," and
ZIV ORENSTEIN,
a/k/a "Aviv Stein," a/k/a "John Avery,"

Defendants.

### SEALED SUPERSEDING INDICTMENT

S1 15 Cr. 333 (LTS)

(15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. §
240.10b-5; 18 U.S.C. §§ 371, 1030, 1343,
1349, 1028(f), 1028A, 1955, 1956, 1960 &
2, 31 U.S.C. §§ 5363 & 5366)

PREET BHARARA
United States Attorney.

TRUE BILL

_____
FOREPERSON

10/22/15 - Filed Sealed Superseding Indictment
pc

J Peck.
USMJ